UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                    Chapter 11

100M WATERFORD LLC,                    CASE NO.: 15-14066-AJC
                                                           (Jointly Administered)

      Debtor(s).
_____/

**EMERGENCY MOTION FOR RELIEF FROM AUTOMATIC STAY OR, IN THE ALTERNATIVE, MOTION TO COMPEL REJECTION OF EXECUTORY CONTRACT**
(Hearing requested on or before Tuesday, March 17, 2015)

> **Movants file this motion on an emergency basis because time is of the essence regarding entry of an order confirming that Thinkgusto, LLC, a former franchisee and creditor in the above-captioned bankruptcy case, may immediately shut down its "100 Montaditos" franchise restaurant in West Palm Beach because: (A) the Franchise Agreement was effectively terminated pre-petition and is thus not an interest of the estate to which the automatic stay applies; (B) for cause, to mitigate any further damages as a result of Debtor's prior breaches of the Agreement, since Movants are incurring losses of approx. $1,000.00 per day and forcing them to continue operating the restaurant could force them into bankruptcy as well; and/or (c) a mandatory arbitration provision requires Movants to proceed with binding arbitration to liquidate their claims against the Debtor. In the alternative, to the extent the Franchise Agreement may still be an executory contract, Movants seek to compel Debtor's immediate rejection of same. Movants also request the 14 day stay imposed by Rule 4001(a)(3) be waived to avoid further delay and harm, and/or that the 30 day deadline to file a proof of claim pursuant to Rules 3002(c) and Local Rule 3003-1(C) be stayed until after Movants' claims are liquidated via binding arbitration.**

      Movants, Thinkgusto, LLC ("Thinkgusto"), Gustavo Gomez ("Gomez") and Antonio Salanova ("Salanova," together with Thinkgusto and Gomez, the "Movants"), specially appearing through counsel and pursuant to Sections 362 and 365, Rules 3003, 4001, 6006 and 9014, and

Local Rules 3003-1, 4001-1 and 6006-1,[1] hereby file this motion ("Motion") seeking the entry of an Order lifting and/or modifying the automatic stay for the limited purpose of allowing Movants to immediately shut down operations of their 100 Montaditos franchised restaurant located in West Palm Beach, Florida (the "WPB Restaurant"): (a) because the Franchise Agreement between Thinkgusto and debtor, 100 M Franchise LLC ("Debtor"), as amended, was effectively rescinded pre-petition; (b) for cause, in order to mitigate Movants' damages since continued operations are resulting in losses of about $1,000.00/day; and/or (c) as may be necessary to proceed with binding arbitration to liquidate their claims against the Debtor. In the alternative, Movants seek to compel the immediately rejection of the Franchise Agreement. In support, Movants state as follows:

## INTRODUCTION

The Debtor is a U.S. based shell-company that is owned, operated and funded by a Spanish food-service conglomerate, Grupo Restalia Eurorestauracion SA de CV ("Restalia"). Restalia owns and operates a system of over 300 "100 Montaditos" franchised restaurants in Spain but, until recently, had little to no presence in the United States. Restalia's attempts to start an American franchise system vis-à-vis the Debtor have been an absolute fiasco. Indeed, a Playbill is required to keep track of the "revolving door" of managers that Restalia has installed and removed every several months, like clockwork, since the Debtor was first organized in the United States in September of 2011. To make matters worse, the Debtor has essentially abandoned its U.S. franchise system – terminating virtually all of its franchise agreements while leaving the last few remaining non-affiliate franchisees, such as Thinkgusto, to "die on the vine."

---

[1] Unless otherwise noted, all references to "Chapter" and "Section" refer to the Bankruptcy Code appearing in Title 11 of the United States Code; all references to a "Bankruptcy Rule" refer to the Federal Rules of Bankruptcy Procedure; and all references to a "Local Rule" refer to the Local Rules of the U.S. Bankruptcy Court for the Southern District of Florida.

As a result of the Debtor's numerous violations of Thinkgusto's Franchise Agreement and applicable franchise law, together with the utter lack of guidance from management both in the United States and in Spain, Thinkgusto's experience as a franchisee for the Debtor has been a disaster. The Movants lost not only their initial $60,000 franchise fee, but they have also incurred hundreds of thousands of dollars in carrying costs – losses that continue to accrue at the rate of $1,000 per day. Accordingly, on March 2, 2015, Thinkgusto provided formal written notice (through counsel) that the Franchise Agreement had been rescinded and the WPB Restaurant would be closed immediately. Two days later, the Debtor filed the above-captioned bankruptcy case. Now, in an abundance of caution, Movants seek an order confirming that they are allowed to complete what they started just days before the Debtor filed this case – shutting down operations in an attempt to mitigate any further losses at the hands of the Debtor and Restalia and, as may be necessary, to proceed with mandatory arbitration to liquidate the parties' respective claims as required under the Franchise Agreement that was drafted by the Debtor.

## BACKGROUND

**A. The Debtor's Violation of the Franchise Agreement and U.S. Franchise Law.**

1. The Debtor and its affiliates have attempted to operate and franchise what they describe as "modern fast-casual restaurants" ("<u>100 Montaditos Restaurant(s)</u>") within the United States, including Florida, New York, Washington, D.C. and Virginia. [ECF 4, ¶5]. A copy of the Debtor's corporate filings with Florida's Division of Corporations from inception through present is attached as <u>Composite Exhibit A</u>.

2. As of October 10, 2011, when the Debtor first started doing business in Florida, it was being managed by Carlos Perez-Tenorio and Vincente Moreno-Carrasco – both of whom were based out of Restalia's offices in Madrid, Spain. *See* <u>Ex. A</u> at pp.1-4 (2001 Appl.). Within months, however, Mr. Moreno-Carrasco was replaced by Juan Gervas Garcia-Ramos. *Id.* at p.5 (April 2012

ABR). Then Restalia changed the Debtor's management structure again just months later, adding Carlos Perez-Tenorio as a third co-manager. *Id.* at p.6 (Oct. 2012 UBR Amendment). They changed the Debtor's management structure yet again several months later, removing Mr. Gervas Garcia-Ramos as a co-manager as of June 2013. *Id.* at p.9 (June 2013 ABR). Several months later, they added Francisco Javier Cernuda Fernandez as the Debtor's fifth (5th) manager in only three (3) years. *Id.* at p.10 (Jan. 2014 ABR). Predictably, Restalia changed management again several months later, removing Mr. Perez-Tenorio as a co-manager of the Debtor as of March 2014. *Id.* at p.11 (March 2014 ABR). According to its most recent corporate filing, Mr. Cernuda Fernandez is now the Debtor's sole manager. *Id.* at p.12 (Jan. 2015 ABR).

3. Thinkgusto agreed to operate two separate 100 Montaditos Restaurants, for which it pre-paid the Debtor a $60,000.00 franchise fee – before it ever received the required Franchise Disclosure Documents ("FDD"). Thinkgusto first attempted to open a location in Coconut Creek, but never did so because of logistical reasons. As a result, on or about October 24, 2013, the parties agreed to cancel that agreement in lieu of the present Franchise Agreement allowing Thinkgusto to operate the WPB Restaurant. A copy of the Franchise Agreement for the WPB Restaurant is attached as Exhibit B.[2]

4. Among other things, the Franchise Agreement allowed Thinkgusto to terminate the relationship if the Debtor materially breached the contract and did not "promptly undertake and continue efforts to cure such material breaches within a reasonable period of time and furnish [Thinkgusto] reasonable proof of such efforts." *Id.* at p.32, §16.1. The Franchise Agreement also

---

[2] Since they had already prepaid for the right to open another location, Movants also looked into taking over a second 100 Montaditos Restaurant in Boca Raton after another franchisee backed out. However, Movants were told by the Debtor's management that, in order to do so, they would need to change the location of the restaurant. By that time, the West Palm Beach location was also failing, so the Boca Raton location never materialized. The Debtor has yet to return Movants' initial pre-payment for a second restaurant.

allowed it to be assigned by the Debtor, subject to Thinkgusto being notified beforehand and any assignee "assum[ing] the obligations of Franchisor [t]hereunder." *Id.* at pp. 37-38, §18.1.

5.  On that same date, the parties entered into a First Amendment to Franchise Agreement ("First Amendment," and together with the Franchise Agreement, the "Agreement"). A copy of the First Amendment is attached hereto as Exhibit C. The First Amendment contains a mandatory arbitration clause requiring that:

> Any and all disputes … or claims arising from or relating to [the Franchise] Agreement between [the Debtor, any of its Affiliates or any of their respective officers, directors, agents, employees, and attorneys, on the one hand, and [Thinkgusto], any of its Affiliates, or any of their respective officers, directors, agents, employees, and attorneys, on the other hand, shall be settled pursuant to binding arbitration under the auspices and rules of arbitration of the International Court of Arbitration of the International Chamber of Commerce. The seat of the arbitration shall be in Miami, Florida (USA), the language of the arbitration shall be English. The arbitration shall comprise a panel of three (3) arbitrators[.] … The substantive law applicable to the arbitral process shall be the law of the State of New York, USA, without reference to its conflict of laws rules or the Rules pertaining to the United Nations Convention on Contracts for the International Sale of Goods. The applicability of the substantive law of the State of New York, USA, is not to be displaced based upon any conflicts of law or choice of law rubric pertaining to any jurisdiction.

*See* First Amendment, Ex. C, at p.2, §3 (emphasis added).[3]

6.  Both prior to and after signing the Agreement, the Debtor and Restalia provided no meaningful assistance to Thinkgusto and other franchisees; most of whom were forced to create their own methods of doing business while Restalia "tinkered" with the Debtor's franchise system. As a result, The Debtor violated applicable U.S. and Florida State franchise laws and materially breached the Franchise Agreement.

---

[3] As a matter of full disclosure, the parties may have also circulated a Second Amendment to the Franchise Agreement (the "Second Amendment"). However, Movants do not have a fully-executed copy of that Second Amendment and do not recall having signed same. Regardless, even if signed, that Second Amendment also contains a mandatory arbitration provision – just like the First Amendment, mooting any argument to the contrary. A copy of the draft Second Amendment is attached as Exhibit G.

7. In particular, the Debtor failed to comply with the requirements set forth in the Federal Trade Commission ("FTC") "Franchise Rule." *see* 16 CFR Part 436. It also failed to provide Movants with a complete copy of its' FDD at least 14 days before Thinkgusto pre-paid a $60,000 franchise fee. Instead, representatives of the Debtor and Restalia provided Movants with misleading representations regarding gross revenues and net profits they said could be expected as a 100 Montaditos franchisee. *See, e.g.,* 16 CFR 436.1(24) (prohibiting franchisor from making representations as to "specific level of potential sales, income, gross or net profit").

8. The Debtor also materially breached the Franchise Agreement itself by, *inter alia*: (a) failing to provide the support, training, services and guidance necessary to maintain a viable franchise system; (b) misrepresenting Movants' initial investment costs in violation of the FTC Franchise Rule; (c) commandeering Movant's site selection process; and (d) failing to disclose an apparent "kickback" arrangement the Debtor and/or Restalia maintains with their Spanish vendors – all done without regard as to how such conduct would detrimentally effect the Movants and the Debtor's other franchisees.

9. As a result of such misconduct, most of the Debtor's franchises failed – eventually prompting the Debtor (together with 13 of its affiliated U.S. based franchisees) to file 14 separate "bare-bones" petitions for relief under Chapter 11 on March 4, 2015 (the "Petition Date") [ECF 1, 5]. Because those other debtor-entities are "affiliates" of the Debtor within the meaning of Section 101(2), with common interests as to the reorganization of their respective estates, the Debtor has since successfully moved to have all 13 of those affiliated cases transferred to, and jointly administered by this Court [ECF 5, 6, 11, 13].

**B. Pre-Petition Termination of Franchise Agreement.**

10. Meanwhile, prior to the Petition Date, on January 30, 2015, ThinkGusto's attorney, Leon Hirzel, Esq., of Hirzel Dreyfuss, PA, submitted a letter ("First Hirzel Letter") to Restalia's

principal, Jose Maria Fernandez Capitan ("Capitan"). A copy of the First Hirzel Letter is attached as Exhibit D. The First Hirzel Letter asserted the following claims against the Debtor, Restalia and Capitan: (1) violations of Sherman Act, [15 USC §1]; (2) violations of the Florida Franchise Act [Fla.Stat. §817.416]; (3) violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") [Fla.Stat. § 501.203(3)]; (4) breach of contract; (5) common law fraud; (6) promissory estoppel; and (7) unjust enrichment. *Id.*, Ex. D at p.7.

11.     On February 17, 2015, the Debtor (through counsel) responded to the First Hirzel Letter claiming, *inter alia*, that the Debtor had not "failed to comply with applicable disclosure requirements." *See* Letter from M. Joblove, dated Feb. 17, 2015 ("Joblove Letter") attached as Exhibit E, at p.1.  The Joblove Letter did not indicate whether or not the Debtor would "promptly undertake and continue efforts to cure such material breaches" as required under the Agreement, but instead alleged that Thinkgusto had "breached their obligations to [the Debtor]." *Id.*

12.     On March 2, 2015, Movant (again, through counsel) provided Debtor with formal written notice (the "Second Hirzel Letter"), advising the Debtor that Thinkgusto was rescinding the Agreement effective immediately. A copy of the Second Hirzel Letter is attached as Exhibit F. The Second Hirzel Letter specifically advised the Debtor that:

> "In order to mitigate its damages and avoid incurring continuing substantial operating losses, Thinkgusto plans to immediately cease operating its 100 Montaditos restaurant at City Place in West Palm Beach. You are welcome to immediately take over the operations. Please contact us to coordinate the transfer of the operations to you." *Id.* at p.3.

13.     The Debtor did not provide any written response to the Termination Letter.  Rather, just two days later, the Debtor filed skeletal Chapter 11 petitions on behalf of itself and 13 of its affiliates. [4] The Movant's were not listed among the Debtor's top 20 creditors [ECF 1].  Now, in

---

[4] Based upon, *inter alia*, the content of the Second Hirzel Letter and the timing the Debtor's bankruptcy filing, an argument could be made the Debtor's bankruptcy constitutes a "bad faith filing" under Section 1112. *See In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir. 1988); *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984).

order to mitigate its past damages and to avoid incurring any further losses, Movants seek an order from this Court confirming they may immediately cease operations of the WPB Restaurant and, as may be necessary, proceed with binding arbitration to liquidate their claims against the Debtor and its affiliates.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. The statutory predicates for the relief requested herein are Section 105(a) and 362(d). Venue of this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtor is operating as a debtor-in-possession pursuant to Sections 1107(a) and 1108.

## MEMORANDUM OF LAW

**I.    Motion to Lift and/or Modify Automatic Stay.**

15. Section 362(d) provides, in pertinent part:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section, if –

(1)  the debtor does not have equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. §§ 362(d)(1), 362(d)(2).

16. Section 362(g) further provides:

(g) In any hearing under subsection (d) or I of this section concerning relief from the stay of any act under subsection (a) of this section –

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g).

**A. The Franchise Agreement is Not an Executory Contract and does not Constitute Property or Interest of the Estate Subject to Automatic Stay.**

17.     The Movants seeks confirmation from the Court that the automatic stay does not apply to its Franchise Agreement, since that agreement was effectively rescinded pre-petition. As such, the Debtor lacks a property interest therein and the WPB Restaurant cannot form a basis for the Debtor's reorganization. Indeed, Section 365 only gives a debtor the right to assume an executory contract. However, if that contract has been terminated pre-bankruptcy, there is nothing left for the debtor to assume. *See Moody v. Amoco Oil Co.*, 734 F.2d 1200 (7th Cir. 1984) (citing *In re Fontainebleau Hotel Corp.*, 515 F.2d 913 (5th Cir.1975)). This conclusion is supported by a number of bankruptcy courts. *See New Media Irjax v. D.C. Comics*, 19 B.R. 199 (Bkrtcy.M.D.Fla. 1982); *In re Benrus Watch Co.*, 13 B.R. 331 (Bkrtcy.S.D.N.Y.1981); *In re Beck*, 5 B.R. 169 (Bkrtcy.D.Haw.1980).

18.     Similarly, Section 541(a) provides that a debtor's estate only consists of "legal or equitable interests of the debtor in property as of the commencement of a case." "Thus, whatever rights the Debtor has in property at the commencement of the case continue in bankruptcy – no more, no less." *Moody, supra*. Section 541 is not intended to expand the debtor's rights against others more than they exist at the commencement of the case. H.R.Rep. No. 595, 95th Cong., 1st Sess., reprinted in 1978 U.S.Code Cong. & Ad.News 5787; *see also In re Real Pro Financial Servs., Inc.*, 120 B.R. 216, 218 (Bankr. M.D.Fla. 1990) (any attempt by debtor to submit Chapter 11 plan purporting to modify contractual relationships of parties outside the scope of Section 1141 would be "fatally flawed for the purposes of confirmation.").

19. To date, the Debtor has not asserted any property interest in the Agreement of the WPB Restaurant. Moreover, the relief sought does not address the stay of an act against property of the estate. Rather, Movants are simply seeking to shut down operations in order to avoid getting dragged into bankruptcy themselves, as has happened to the Debtor and its affiliate-franchisees. Even if the Agreement and the WPB Restaurant did constitute an interest of the estate, the Debtor has not, and cannot establish that they would be necessary to an effective reorganization. *See* 11 U.S.C. §362(d)(2)(B). To the contrary, due to the Debtor's misconduct, the WPB Restaurant has been hemorrhaging money since it opened; thus, it would be in the best interests of the Debtor, the estate and <u>all</u> creditors to grant stay relief in order to allow Movants to mitigate any additional claims against the estate if they were required to remain open any longer.

20. Finally, even assuming, *arguendo*, the above factors do not apply, by its very terms, the Franchise Agreement is no longer an executory contract because the only affirmative obligation on behalf of Thinkgusto is to pay royalty fees to the Debtor. As this Court has stated in the past, to determine whether a contract is executory, most courts follow the "Countryman" definition, which defines an executory contract as "one that is not so fully performed that a breach by either side would constitute a material breach of the contract." *In re Peralta Food Corp.*, 07-16508-AJC, No. 69 at *7 (Bank.S.D.Fla. Jan. 18, 2008) (Cristol, C.J.E.) (quoting *In re Waldron*, 36 B.R. 633, 636 n.2 (Bankr. S.D.Fla. 1984); *In re Charter Co.*, 52 B.R. 267, 270 (Bankr. M.D.Fla. 1985)). "With respect to agreements where one party's obligation is to collect money, the majority of courts have concluded that such agreements are not executory contracts." *Id.* (citing *In re Norquist*, 43 B.R. 224, 228 n.2 (Bankr.D.Wash. 1984) and *In re Structurlite Plastics Corp.*, 86 B.R. 922, 926 (Bankr.S.D.Ohio 1988)). Such is the case here, given that the only obligation Movants have to the Debtor is to pay royalty fees. Accordingly, the Agreement is not an interest or property of the estate and is thus not subject to the automatic stay.

**B. Movants are entitled to Modification of Automatic Stay for "Cause."**

21. Even assuming, *arguendo*, the Franchise Agreement is not an executory contract, Movants should still be permitted to terminate the Agreement for cause pursuant to Section 362(d)(1). "Although the filing of a bankruptcy petition operates as an automatic stay of the continuation of any proceeding against the debtor, a party in interest, such as a party to a court proceeding involving the debtor, may obtain relief from the automatic stay, after notice and a hearing, 'for cause.'" *In re Beane*, 404 B.R. 942, 948 (M.D.Fla. 2008). As used in Section 362(d)(1), the term "cause" is a broad and flexible concept which permits a bankruptcy court, as a court of equity, to respond to inherently fact-specific situations." *In re Indian River Estates, Inc.*, 293 B.R. 429, 433 (Bankr. N.D.Ohio 2003).

22. Cause is not defined in the Bankruptcy Code, and must be determined on a case by case basis based on an examination of the totality of circumstances. *In re Reitnauer*, 152 F.3d 341, 343 n. 4 (5th Cir. 1998). Legislative history sheds more light on what Congress intended "cause" to mean:

> [I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere....
>
> A desire to permit an action to proceed to completion in another tribunal may provide another cause. Other causes might include the lack of any connection with or interference with the pending bankruptcy case. . . . The facts of each request will determine whether relief is appropriate under the circumstances.
>
> H.R.Rep. No. 595, 95th Cong., 1st Sess. 341 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 50 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5836, 6297.

23. Bankruptcy courts should also examine a number of non-exclusive factors, including the following:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the

> bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether the movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of the harms.
>
> *In re Beane*, 404 B.R. at 948 (citing *In re Sonnax Industries, Inc.*, 907 F.2d 1280, 1286 (2nd Cir. 1990)).

24. Many of the factors described by Congress and the Courts are present in this case, warranting modification of the automatic stay: (a) the Movants' claims against the Debtor and its affiliates (as well as any possible claims for set-off) would be fully liquidated via binding arbitration, thus resulting in a partial or complete resolution of such issues; (2) since there is no value to the WPB Restaurant, allowing Thinkgusto to shut down operations would not <u>truly</u> interfere with this bankruptcy case; (3) there is already another specialized tribunal with the necessary expertise to hear the various claims between the parties (*i.e.*, the International Court of Arbitration of the International Chamber of Commerce); (4) the Movants' success at binding arbitration would likely only result in a liquidated unsecured claim against the Debtor; (5) the interests of judicial economy outweigh other interests, as the continued operation of the WPB Restaurant would likely lead to addition bankruptcy filings; and, most importantly, (6) the impact on the parties and the balance of the harms weigh heavily in favor of the Movants, given that they are losing $1,000.00 per day simply because they do not wish to run afoul of the automatic stay, whereas the Debtor has no further interest in the Agreement or the WPB Restaurant. Indeed, the hardship to the Movants far outweighs any hardship to the Debtor if they were forced to keep the

WPB Restaurant open until (and unless) the Debtor somehow devises a plan of reorganization that includes assuming the subject Agreement or, as is far more likely, this proceeding gets dismissed or converted to a Chapter 7 liquidation.

25. Moreover, the Debtor has not cured, nor has it provided any adequate assurances that it will promptly cure existing defaults (both monetary and non-monetary),[5] as required under Section 365. Under the Code, executory contracts that cannot be assigned under non-bankruptcy law may not be assumed and assigned in a bankruptcy case without permission of the contracting party. *See, e.g., In re Escarent Entities, L.P.*, 2011 WL 1659512 (5th Cir. Apr. 28, 2011) (contract may not be assumed if there are "incurable" breaches of the underlying agreement); *see also In re West Electronics Inc.*, 852 F.2d 79 (3d Cir. 1988) (holding that, where applicable non-bankruptcy law bars assignment, debtor cannot assume contract – even where it does not intend to assign contract to third party). Taking into account all these factors, more than sufficient "cause" exists to grant Movants' relief from the automatic stay.

    **C. Movants are entitled to Stay Relief based upon Binding Arbitration Provision in the Franchise Agreement between the Debtor and Thinkgusto**.

26. "There is a strong federal policy in favor of arbitration … and the Arbitration Act calls for the enforcement of valid arbitration agreements." *AASI Creditor Liquidating Trust v. Peoplesoft USA, Inc.*, 08-01395-AJC, No. 31 at *13 (Bank.S.D.Fla. Sept. 29, 2008) (Cristol, C.J.E.) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1985); 9 U.S.C. §2). "This federal policy applies with special force in the field of international commerce." *Id.* (citing *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 631 (1985))

---

[5] As a matter of full disclosure, the parties may have circulated a Franchise Support Agreement in conjunction with the Franchise Agreement (the "Support Agreement"), requiring the Debtor to provide Thinkgusto with $2,000.00 per month to subsidize Movant's losses for having to continue operating the WPB Restaurant. However, Movants do not have a fully-executed copy of that Support Agreement. Regardless, even if not signed, addition material defaults also preclude any possible assumption and/or assignment of the Franchise Agreement by the Debtor.

(internal punctuation omitted). "In general, bankruptcy courts do not have the discretion to decline to enforce an arbitration agreement relating to a non-core proceeding." *Id.* (citing *Whiting-Turner Contracting Co. v. Electric Machinery Ent., Inc.*, 479 F.3d 791, 796, 798 (11th Cir. 2007). "In fact, Congress considers this policy to be so important that a district court's interlocutory grant of such a motion is not immediately appealable." *Id.* (citations omitted). "This limitation on appeals reflects Congress's studied determination 'to promote arbitration and to keep judicial involvement to the barest minimum.'" *Id.* (citing *O.P.C. Farms, Inc. v. Conopco Inc.*, 154 F.3d 1047, 1049 (9th Cir. 1998). "Finally, arbitrability turns on the underlying facts of [a creditor's] claims, not on the legal labels the plaintiff attaches to them." *Id.* (citing *Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 384 (11th Cir. 1996). If the allegations underlying such claims "touch matters" covered by an agreement with an arbitration clause, "then those claims must be arbitrated, regardless of how they are labeled." *Id.* (citing *Mitsubishi*, 473 U.S. at 624-25 n.13). Moreover, parties to such agreements may still be compelled to arbitrate even where, as here, the contract has already been breached or terminated. *See In re All American Semiconductor, Inc.*, 2010 WL 2854153, at nt.14 (Bank. S.D.Fla. July 20, 2010) (Isicoff, J.) (citing *Madison Foods, Inc. v. FlemingCompanies, Inc. (In re Fleming Companies Inc.)*, 325 B.R. 687 (Bankr. D.Del. 2005)).

27.     As a result of this strong policy in favor of arbitration, this Court (among others in this District) have routinely enforced mandatory arbitration clauses in pre-petition contracts between bankruptcy debtors and their creditors so that non-core claims can be resolved through arbitration. *See, e.g., AASI Creditor Liquidating Trust*, 08-01395-AJC, No. 31; *see also All American Semiconductor, Inc.*, 2010 WL 2854153, *12 (citing *Manchester, Inc. v. Lyle (In re Manchester, Inc.)*, 417 B.R. 377 (Bankr. N.D. Tex. 2009)) (bankruptcy courts "must enforce an arbitration agreement relating to a noncore proceeding.").

28. Applying these principles to the arbitration clause at issue in this case, any and all claims between the Movants and the Debtor, including, without limitation, any and all potential counter-claims by the Debtor against Movants for wrongful termination and/or closing the WPB Restaurant, "fall squarely within the confines of the extremely broad arbitration language set forth in the First Amendment to the Franchise Agreement]." See *AASI Creditor Liquidating Trust*, *supra*, at *17. That First Amendment requires that any and all disputes or claims relating to the Agreement between the Debtor and Thinkgusto (or any of their respective affiliates) shall be resolved in binding arbitration with the International Court of Arbitration of the International Chamber of Commerce. *See* First Amendment, Ex. C, at p.2, §3. All of those respective claims are non-core, and most, if not all are based on U.S. and Florida non-bankruptcy law. In addition, Movants' claims would likely be liquidated in a more expedient manner via arbitration, with streamlined discovery procedures and an expedited proceeding schedule. All of these factors point in favor of liquidating the Movants' claims through arbitration.

29. As this Court itself aptly noted in *AASI Creditor Liquidating Trust v. Peoplesoft USA, Inc.*, Congress has established a strong policy favoring the enforcement of arbitration clauses in private contracts, and the policies and purposes of the Bankruptcy Code are not undermined by requiring the Movants claims to be liquidated through arbitration. Accordingly, Movants should be allowed to close down and abandon the WPB Restaurant and, as necessary, proceeding with arbitration to liquidate their claims pursuant to the agreed-upon terms of the Agreement.

**II.    Alternative Motion to Compel Rejection of Franchise Agreement.**

30. Because the Debtor operates as a debtor-in-possession, it possesses the rights afforded trustees by Section 365. 11 U.S.C. § 1107. Section 365 thus affords the Debtor the right to reject executory contracts, subject only to court approval.[6] However, this Court is also

---

[6] As noted above, Movants believe the Franchise Agreement at issue in this case is no longer an executory contract

authorized to compel debtors to assume or reject executory contracts within a specified time period. *See* 11 U.S.C. §§ 365(d)(2), 105(d)(2)(A) (authorizing courts to issue orders setting dates by which debtors in possession must assume or reject executory contracts). Congress's purpose in crafting this section was to "prevent parties in contractual … relationships from being left in doubt concerning their status vis-à-vis the estate." H.R. Rep. No. 95-595, at 348 (quoting in *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1078–79 (3d Cir. 1992); *In re Beker Indus. Corp.*, 64 B.R. 890, 898 (Bankr. S.D.N.Y. 1986)).

31. While the general policy of section 365 is to provide debtors with "breathing space" to determine which executory contracts to assume or reject, that "breathing space … is not without limits." *In re Enron Corp.*, 279 B.R. 695, 702 (Bankr. S.D.N.Y. 2002) (citation omitted). Indeed, in circumstances such as the one here, "the rights of the nondebtor party … outweigh the need of the debtor in possession for unlimited flexibility and breathing space." *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 551–52 (1984). Thus, "a debtor's rejection of an executory contract is proper if it would be advantageous to the debtor's estate." *In re Prime Motor Inns*, 124 B.R. 378, 381 (Bankr. S.D.Fla. 1991); *see also In re Dunes Hotel Assocs.*, 194 B.R. 967, 988 (Bankr. D.S.C. 1995) ("Numerous courts in other districts have also held that to utilize § 365, there must be a showing that the rejection will benefit the estate or creditors, but certainly more than merely benefiting the debtor itself or its equity holders.").

32. As noted in detail hereinabove, closing the WPB Restaurant benefits Movants and other estate creditors. In contrast, keeping the restaurant open would serve no benefit to the Debtor other than giving it "leverage" over Movants, in exchange for which they would receive nothing but an ever-growing claim against the estate (which would, in turn, detrimentally effect all other

---

because: (a) it was already rescinded; (b) it was materially breached by the Debtor pre-petition; and (c) the only obligation on behalf of Thinkgusto is to pay royalty and other fees to the Debtor. However, to the extent this Court determines otherwise, Movants seek to compel rejection of same.

estate creditors). Based on the thousands of dollars of losses that continue to accumulate daily just from by keeping the WPB Restaurant open, to the extent it may still constitute an executory contract, the Debtor should be compelled to immediately reject the Franchise Agreement in the best interests of the estate and its creditors.

33.     Additionally, Section 365(b)(1) also provides that, if there has been a default in an executory contract or unexpired lease, said contract or lease may not be assumed unless the Trustee at the time of the assumption cures or provides adequate assurance that the debtor-in-possession must promptly cure such default and provides adequate assurance of future performance under such contract or lease. S*ee In re B-K of Kansas Inc.*, 69 B.R. 812, 815 (Bankr. D.Kan. 1987) (franchisee debtor's ongoing default under franchise agreement diminished value of trademark and service marks, thus failing to provide adequate protection). To the extent the Debtor objects to the relief requested, Movants would demand the Debtor provide adequate assurance of its future performance or, in lieu thereof, simply taking over the WPB Restaurant.

## **CONCLUSION**

For the reasons stated herein above, Movants respectfully request this Court: (a) enter an order lifting and/or modifying the automatic stay for the limited purpose of allowing Thinkgusto to immediately shut down operations of the WPB Restaurant and, as may be necessary, allowing the Movants to proceed to binding arbitration liquidate their claims; or, in the alternative: (b) compelling the Debtor to reject the Franchise Agreement for the same reasons and purposes. The Movants also respectfully request the 14 day stay imposed by Rule 4001(a)(3) be waived to avoid further delay and harm and, as may be applicable, the 30 day deadline to file a proof of claim pursuant to Rules 3002(c) and Local Rule 3003-1(C) be stayed until after the Movants' claims are liquidated pursuant to mandatory binding mediation.

///

|  |  |
|---|---|
| Dated: March 12, 2015. | Respectfully submitted, |
|  | **Hirzel Dreyfuss, PA** |
|  | /s/ Leon F. Hirzel<br>Leon F. Hirzel, Esq.<br>Florida Bar No. 85966<br>333 SE 2nd Ave, Suite 2000<br>Miami, FL 33131<br>Phone: 305.615.1117<br>Fax:   305.615.1585<br>E-mail: leon.hirzel@hirzeldreyfuss.com<br>*Co-Counsel for Movants* |
|  | **Kish Law Firm, PLLC** |
|  | /s/ Matthew S. Kish<br>Matthew S. Kish, Esq.<br>Fla. Bar. No. 491640<br>1200 N. Federal Hwy, Suite 200<br>Boca Raton, Florida 33432<br>Phone: 561.210.8365<br>Fax:   561.210.8301<br>Email: matt@kish-law.com<br>*Co-Counsel for Movants* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on March 12, 2015, that a true and correct copy of the foregoing was served via the Court's Notice of Electronic Filing upon the Registered Users listed below.

/s/ Matthew S. Kish
Matthew S. Kish

The following is the list of parties who are currently on the list to receive email notice/service for this case:

Paul J. Battista, Esq on behalf of Debtor 100 M Lincoln LLC:
pbattista@gjb-law.com, gjbecf@gjb-law.com

Mariaelena Gayo-Guitian on behalf of Debtor 100 M Franchise LLC:
mguitian@gjb-law.com; gjbecf@gjb-law.com; vlambdin@gjb-law.com; cesser@gjb-law.com; chopkins@gjb-law.com

Office of the US Trustee:
USTPRegion21.MM.ECF@usdoj.gov